AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT
### for the
Southern District of California



FILED

JUL 15 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Global Positioning System (GPS) Tracking Device
IMEI: 351777091026102

)
)
)
)
)
)

Case No.

'19 MJ  2941

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §952, 960 and 963 | Importation of controlled substances and conspiracy |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Timothy O'Sullivan, SA, Department of Homeland Security
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  7/12/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Global Positioning System ("GPS") Tracking Device
> IMEI: 351777091026102
> Contained in Evidence Bag
> FPF No. 2019250400106601
> (the "**Target Device**");

**The Target Device** is currently in the possession of the Department of Homeland Security at 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the GPS tracking device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular-enable device. The seizure and search of the GPS tracking device will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the GPS tracking device will be electronic records, communications, and data such as location data and subscriber or user information, for the period of January 3, 2019, to April 3, 2019:

a.   tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject GPS device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

IN THE MATTER OF THE SEARCH OF          )
                                        )
One GPS Tracking Device                 )
IMEI: 351777091026102                   )      **AFFIDAVIT OF**
                                        )      **SPECIAL AGENT**
                                        )      **TIMOTHY O'SULLIVAN**
                                        )      **IN SUPPORT OF A SEARCH**
                                        )      **WARRANT**

**AFFIDAVIT**

I, Timothy O'Sullivan, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security, Homeland Security Investigations agents for the following target property, hereafter referred to as the **Target Device**: a Global Positioning System ("GPS") Tracking Device with IMEI: 351777091026102: as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963 – Importation of Controlled Substances and Conspiracy, as described in Attachment B. This search supports an investigation and prosecution of Ruben SANCHEZ-FLORES.

2.     The **Target Device** was seized on June 25, 2019 at the Otay Mesa Port of Entry in San Diego, CA. The **Target Device** was seized from a vehicle driven by Ruben SANCHEZ-FLORES in connection with his arrest for alleged violations of Title 21, United States Code, Sections 952, 960, and 963 – Importation of Controlled Substances. The **Target Device** is currently stored at Homeland Security Investigations at 880 Front Street, San Diego, California 92101.

1

3.      The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents.   The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case.   Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

### EXPERIENCE AND TRAINING

4.      I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

6.      I am a Special Agent (SA) with ICE-HSI and have been so employed since November 2010.  I am currently assigned to the Deputy Special Agent in Charge, San Ysidro Office, Contraband Smuggling Group 2, and my duties include investigating the trafficking of illicit controlled substances; and the importation and distribution of illegal substances. I have training and experience in multiple investigative areas, to include conducting investigations and making arrests based on violations of Title 21, United States Code Sections 952, 960, and 963. Prior to September 2017, I was assigned to the Cargo Based Smuggling Group for approximately 2 years. Prior to my assignment with the Cargo Based Smuggling Group, I was assigned to the San Diego Tunnel Task Force for approximately four years.

7.      I have had approximately 23 weeks of intensive training at the Federal Law Enforcement Training Center at Glynco, Georgia. These 23 weeks were comprised of

1  approximately 12 weeks of the basic criminal investigator training program and
2  approximately 11 weeks of ICE Special Agent Training. I have received training in
3  identifying various controlled substances and conducting Title 21 controlled substances
4  investigations.

5         8.    Prior to working for HSI, I worked for the Federal Air Marshal Service, Special
6  Agent in Charge, Boston Field Office, for approximately eight years and six months. My
7  duties with Federal Air Marshal Service were to detect, deter, and defeat criminal and
8  terrorist activities that target our nation's transportation systems.

9         9.    I have personally participated in and conducted investigations of violations of
10  various State and Federal criminal laws, including those related to narcotics violations. I
11  have arrested or participated in the arrest of persons for violations of the Controlled
12  Substances Act. In these cases, I have conducted interviews with the arrested persons and
13  their associates. I have conducted surveillance of narcotics smugglers as they conduct their
14  smuggling activity while crossing the border from Mexico into the United States. Through
15  these investigative activities, I have gained a working knowledge and insight into the typical
16  activity of narcotics smugglers, and the structure of their narcotics smuggling networks.

17  **FACTS SUPPORTING PROBABLE CAUSE**

18        10.    According to a report prepared by Customs and Border Protection ("CBP")
19  Officer McMichael, on April 3, 2019, at approximately 6:00 p.m., SANCHEZ-
20  FLORES, a Lawful Permanent Resident (LPR) of the United States, made an
21  application for admission into the United States from Mexico through the San Ysidro
22  Port of Entry ("POE"). SANCHEZ-FLORES was the driver and sole occupant of a
23  grey Honda Civic bearing California license plate 8GRK454 (the "Vehicle").
24  SANCHEZ-FLORES stated that he was going to San Diego and presented his LPR
25  card. SANCHEZ-FLORES gave CBP Officer McMichael two negative customs
26  declarations. During CBP Officer McMichael's inspection, he received a computer-
27  generated referral[1] from the primary inspection system, and he therefore referred

28
---
[1] On April 1, 2019, two days prior to the defendant's arrest, CBP Officer Torres entered a TECS alert on the Vehicle as a high risk for narcotics smuggling.

SANCHEZ-FLORES to secondary inspection.

11. According to a report prepared by CBP Officer Bence, he was assigned that day to the San Ysidro POE with his assigned Narcotics and Human Detection Dog ("NHDD"). At approximately 6:50 p.m., he responded to screen the Vehicle in secondary inspection, where he received an alert and indication from his assigned NHDD to the passenger side quarter panel of the Vehicle.

12. The Vehicle was then screened using the Z-Portal, and the operator, CBP Officer Sanchez, noticed anomalies inside the driver and passenger quarter panels of the Vehicle.

13. According to a report prepared by CBP Officer Daw, he received the Vehicle for seizure processing in the secondary area of the San Ysidro POE. He discovered several clear vacuum-sealed and cellophane-wrapped packages concealed within both sides of the quarter panels. A total of sixty-five (65) packages were removed from the quarter panels of the Vehicle. A total of sixty-three packages contained a substance which tested positive for the properties of methamphetamine and had a weight of 37.58 kilograms, and two packages contained a substance which tested positive for the properties of heroin and had a weight of 2.42 kilograms. SANCHEZ-FLORES was placed under arrest, and the Vehicle was seized.

14. On June 25, 2019, at approximately 3:00 p.m., during an inspection of the Vehicle with the Government's automobile expert and the defense's investigator, the Government's expert uncovered the **Target Device** taped underneath the dashboard on the driver's side. The **Target Device** was removed from the vehicle, and I seized it as evidence. I opened the Target Device and viewed a SIM card inside.

15. An HSI forensic examiner has viewed the exterior of the **Target Device**. According to the examiner, the **Target Device** most likely was used to relay GPS location information to a telephone number. The **Target Device** may not have stored the GPS location information; however, an analysis of the **Target Device**'s SIM card may reveal the telephone number that received the GPS location information from the **Target Device**.

16.   I have reviewed the crossing history in the TECS system for the Vehicle SANCHEZ-FLORES was driving when he was arrested and determined that the Vehicle had been crossing regularly into the United States (often multiple times in one week) since at least November 15, 2018.  Based upon my experience and investigation in this case, I believe that SANCHEZ-FLORES, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine and heroin.   Based on my experience investigating narcotics smugglers, I submit that probable cause exists to believe the **Target Device** contains information pertaining to narcotics smuggling in the form of either GPS location information and/or the telephone number to which the **Target Device** transmitted GPS location information.

17.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I am aware of the following:

a.   Drug smugglers will install a GPS tracking device in vehicles being used to transport large, and valuable, amounts of illegal cargo.

b.   Drug smugglers will use GPS tracking devices to target and actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.   Drug smugglers and their accomplices will use GPS tracking devices because they can easily determine what time their illegal cargo will arrive at predetermined locations.

d.   Drug smugglers will use GPS devices to ensure that drivers respond to an exact drop off and/or pick up time of their illegal cargo.

18. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain location data.  This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS tracking device.  Specifically, I know based upon my training, education,

consultation with others, and experience investigating these conspiracies that searches of GPS tracking devices yields evidence:

      a.     tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

      b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

      c.     tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

      d.     tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

      e.     tending to identify the user of, or persons with control over or access to, the GPS device; and/or

      f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

19. Based on the facts and opinions set forth in this affidavit, I submit that there is probable cause to believe that information relevant to narcotics smuggling activities, such as location coordinates, travel routes, and subscriber information, will be found in the **Target Device**.

## SEARCH METHODOLOGY

20. It is not possible to determine, merely by knowing the GPS tracking device make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can be simple cellular receiving devices. An increasing number of GPS devices now allow

for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular devices using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.Following the issuance of this warrant, I will collect the **Target Device**, including its SIM card, and subject it to analysis to extract GPS location information and the telephone number that received GPS location information from the **Target Device** for the time period January 3, 2019, to April 3, 2019.

22.   Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take several weeks. To ensure that the **Target Device**'s contents are reviewed and produced in discovery in a timely fashion, the personnel conducting the identification and extraction of data will complete the analysis by October 9, 2019, absent further application to this court.

## CONCLUSION

23.   Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in

Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Timothy O'Sullivan
Special Agent

Subscribed and sworn to before me this ___12___ day of July, 2019.

Honorable William V. Gallo
United States Magistrate Judge

8